# Bettman-Dunlap Co. *v.* Gertz Bros.

(Division B. March 24, 1924.)

[99 So. 384. No. 23785.]

1. EVIDENCE.  *Oral promises by salesman at time order for merchandise taken held inadmissible.*

Where a merchant gives a written order containing a stipulation, "This order is given subject to acceptance by the seller at their office. The terms on which these goods are sold are printed on this blank or written by the salesman whose name is signed to this order. Our terms are a material part of our prices and must be strictly adhered to. These terms are absolute and we recognize no verbal agreements. No alterations can be made after goods are cut. This is a definite order and is not subject to countermand" —and where the buyer relies on correspondence between him and the seller to show an agreement to reduce prices if conditions existing at the time of the shipment warrant it as a defense for refusal to accept the goods shipped, it is error to admit verbal promises made by the salesman at the time the order was taken.

2. SALES.  *Instruction as to price revision agreement disapproved.*

Under the facts contained in the record in this case it is error to give the defendant the following instruction: "The court instructs the jury for defendants, that if they believe from the evidence that the salesman of Helmers, Bettman & Company induced defendants in April, 1920, to give him orders for goods not signed by them, for fall delivery, with the express condition that, should there be a break or decline in prices before shipment, existing prices would be revised and adjusted according to market conditions and prices; and, if the jury further believe from the evidence that said defendants, in order to be assured of protection against declining prices, wrote to Helmers, Bettman & Co., June 18, 1920, to know the attitude of the house as to such decline, and received a reply bearing date June 22, 1920, which confirmed the agreement of their salesman, that prices would be revised according to market conditions, and that defendants, being thus assured, in July gave another order for goods as evidence that on receipt of the invoices of said goods in the fall defendants discovered that said plaintiffs had

wholly failed to revise prices, according to market conditions, and had invoiced them so high that defendants, in the event they received the goods, would not be able to meet the competition, but would sustain a heavy loss, and thereupon defendants notified Helmers, Bettman & Co. of these facts, and that if the prices were not revised according to previous contract the goods would not be received, and finally fixed a time within which plaintiff must revise prices according to market conditions, or defendants would not receive the goods, and that said plaintiffs refused to change and revise said prices, and that thereupon defendants did refuse to receive goods, and that they were in due course returned to Helmers, Bettman & Co., and are now in the hands of plaintiff in this suit, who claims to be the successor of Helmers, Bettman & Co., then the jury will find for the defendants."

3. SALES. *Instruction as to price revision agreement approved.*

Under the facts contained in this record the plaintiff should have been given the following requested instruction: "The court instructs the jury that, if they believe from the evidence in this case that Helmers, Bettman & Co., did write to defendants on June 22, 1920, that 'We are now pleased to be able to report that our prices will be revised for fall in accordance with market conditions, as we find them, at the time of shipment,' and defendants did rely thereon, they are still liable to plaintiffs if the jury believe from the evidence plaintiff did revise their prices as they [plaintiffs] found them at the time of shipment; that in that event this interpretation is binding on the defendants, no matter what the real meaning might have been thought by defendants."

APPEAL from circuit court of Holmes county.
HON. S. F. DAVIS, Judge.

Action by the Bettman-Dunlap Company against Gertz Bros. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

*G. H McMorrough, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellant.

*Teat & Odom* and *Boothe & Pepper,* for appellee.

[NOTE:—No briefs now on filed for either side.]

ETHRIDGE, J., delivered the opinion of the court.

On April 18, 1920, Gertz Bros. gave to Helmers, Bettman & Co., a partnership, an order for certain shoes, the order being taken by a salesman of Helmers, Bettman & Co. at Greenwood, Miss., and transmitted by the salesman to the said Helmers, Bettman & Co. at their place of business, Cincinnati, Ohio. The order contains a condition printed as follows:

"Notice. This order is given subject to acceptance by Helmers, Bettmann & Co., at their office in Cincinnati. The terms on which these goods are sold are printed on this blank, or written by the salesman selling the goods, whose name is signed to this order. Our terms are a material part of our price, and must be strictly adhered to. These terms are absolute, and we recognize no verbal agreements. No alterations can be made after goods are cut. This is a definite order, and is not subject to countermand."

Later, in July, 1920, another order was given for another shipment containing the same stipulations. These orders were not signed by the purchasers, but were sent in by the salesman to the manufacturers.

On June 20, 1920, Gertz Bros. wrote to Helmers, Bettman & Co. the following letter:

"We have received letters from a number of houses from whom we buy shoes that prices of shoes have declined and giving us the benefit of the reduction. They also advise us that should there be any further decline between now and October first, we will be protected. Some of the shoe houses wrote us that whatever decline there will be between now and October first, we will be given credit for.

"Now gentlemen, our business relations have been the most pleasant, and in fact we must say that you are one of the nicest houses we have ever dealt with. At the same time this is a matter of business with us, and you know yourself, that should the market decline two or

three dollars on a pair of shoes, we would not be in a position to meet competition with your shoes, unless you give us a guarantee against a decline in the market between now and October first.

"Please let us hear from you at once regarding the matter, and oblige."

To which letter Helmers, Bettman & Co. replied as follows on June 22, 1920:

"Your letter of the 18th is before us asking what our attitude will be towards prices for fall. You have already received our letter of June 7th, and we take particular pride in the fact that we were probably leaders in the present price reductions, for our original reductions were made last March. That same letter also told you that if it were possible for us to buy our leather at a price under that figured in our shoes that our customers would receive the entire benefit from such an advantageous purchase.

"We are now pleased to report that our prices will be revised for fall in accordance with market conditions as we find them at the time of shipment. This is as much as any manufacturer in good standing can do. While we can now promise reductions in most of our lines, we are not guaranteeing any prices in particular, nor do we wish to create the impression that all competitive prices will be met. Our customers can have absolute confidence in us for a square deal, and we only ask in return that confidence which our fair service to the trade entitles us to expect .

"You can be assured that we here in Cincinnati are keenly alive to the necessity of supplying our trade with merchandise that they meet competition successfully. Your interests will always be properly looked after, for they are, we can assure you, paramount in our minds."

Helmers, Bettman & Co., the manufacturers, afterwards became incorporated as Bettman-Dunlap Company by Mr. Helmers of the former firm selling his interest in the business to Mr. Dunlap, and the business

being incorporated under the name of Bettman-Dunlap Company and becoming by a transfer the owners of the business and of the orders involved.

Considerable correspondence passed with reference to the other goods ordered in July, 1920, but it is not necessary to set that forth in this opinion. But the original goods that were ordered in April, 1920, were shipped, and a portion of the later order also was shipped and invoice made out to Gertz Bros. and mailed to them at Lexington, Miss., but the said Gertz Bros. refused to accept the goods unless the prices at which the goods were billed out were materially changed. The appellant refused to make the change, but stood upon their orders. On September 30, 1920, a telegram was sent by Gertz Bros. as follows: .

"Cancel all orders for shoes for Cruger and Lexington stores."

To this telegram the following reply was made:

"We are in receipt of your telegram of the 29th, asking us to cancel all orders for shoes for the Cruger and Lexington stores. It so happens that the Lexington store order was completed in our shipment of September 18th and 25th, and the Cruger store order was completed with the exception of two lots of Toney red calf in the shipment of September 25th to that point. While your orders had been duly confirmed and properly signed, since it would be advantageous to you to have us accept the cancellation of those twenty-four pair, we are doing so in this instance, owing to the fact that these particular shoes have not been cut, because of our inability to get proper deliveries on this material.

"Whenever we are in a position to favor a customer, we do so willingly, and all that we ever ask in return is that our trade kindly deal with us on the same fair-minded basis, and we believe that our efforts in this instance to accommodate you in accepting a cancellation at this late date of part of an October order will be appreciated."

On October 11, 1920, Gertz Bros. sent the following telegram:

"Helmers, Bettman & Co., Cincinnati, Ohio. Will give you till the eighteenth of this month to give us market prices on the shoes you shipped us if we fail to hear from you by that date we will decline the shipments of Cruger and Lexington at any price.

"[Signed] Gertz Brothers."

And also a letter in the same words was mailed to and received by appellants.

The plaintiffs proved that they made a reduction in the billing price, and testified that this was the best they could do under the conditions existing at the time of shipment. The defendants proved by some witnesses that shoes of the kind and quality involved in the order had declined to the extent of about three dollars fifty cents per pair on the market, which was a greater decline than that allowed by the appellants.

The court below improperly admitted over objection statements and conversations between the salesman, Sullivan, and Gertz Bros., on the date the original order was given, which stipulations were not embodied in that order.

The court gave for the defendant the following instruction, which was assigned for error:

"The court instructs the jury for defendants that, if they believe from the evidence that the salesman of Helmers, Bettman Company induced defendants in April, 1920, to give him orders for goods not signed by them, for fall delivery, with the express condition that, should there be a break or decline in prices before shipment, existing prices would be revised and adjusted according to market conditions and prices, and if the jury further believe from the evidence that said defendants, in order to be assured of protection against declining prices, wrote to Helmers, Bettman & Co. June 18, 1920, to know the attitude of the house as to such decline, and received a reply bearing date June 22, 1920, which con-

firmed the agreement of their salesman that prices would be revised according to market conditions, and that defendants, being thus assured, in July gave another order for goods as evidence; that on receipt of the invoices of said goods in the fall defendants discovered that said plaintiffs had wholly failed to revise prices according to market conditions, and had invoiced them so high that defendants, in the event they received the goods, would not be able to meet the competition, but would sustain a heavy loss, and thereupon defendants notified Helmers, Bettman & Co. of these facts, and that if the prices were not revised according to previous contract the goods would not be received, and finally fixed a time within which plaintiff must revise prices according to market conditions, or defendants would not receive the goods, and that said plaintiffs refused to change and revise said prices, and that thereupon defendants did refuse to receive goods, and that they were in due course returned to Helmers, Bettman & Co., and are now in the hands of plaintiff in this suit, who claim to be the successor of Helmers, Bettman & Co., then the jury will find for the defendants, and the form of their verdict should be, 'We, the jury, find for the defendants.' ''

The defendant also requested a peremptory instruction.

The plaintiff requested and was refused the following instruction:

''The court instructs the jury that, if they believe from the evidence in this case that Helmers, Bettman & Co. did write to defendants on June 22, 1920, that 'We are now pleased to be able to report that our prices will be revised for fall in accordance with market conditions, as we find them at the time of shipment,' and defendants did rely thereon, they are still liable to plaintiffs if the jury believe from the evidence plaintiff did revise their prices as they (plaintiffs) found them at the time of shipment; that in that event this interpretation is binding on the defendants, no matter what the real meaning might have been thought by defendants.''

We think it was error for the court to grant the instruction above set out for the defendants. An analysis of the correspondence above set out shows that the appellants did not guarantee a reduction of prices, nor did they guarantee to meet any competition, but expressly stated they did not guarantee these things. The orders were given and were not canceled before shipment, and if the defendants had any right to a reduction of prices below that which was made by the appellants in billing the goods to them it would devolve upon them to show conditions existing at the place of manufacture at the time the goods were manufactured for the order that would warrant the court and jury in believing that reduction was not in good faith a compliance with the terms of the letter. This the proof does not show. They did not undertake in the letter to fix prices at what would be the market price at the time of the shipment. They reserved the right in the letter to judge of the conditions warranting the reduction. If the terms contained in this letter were not specific enough it would be the duty of the defendants either to cancel the order or to get a specific proposition. It appears from the record that the goods were manufactured to fill the order, and the contract expressly provided that it could not be changed after the goods were cut. We also think that the instruction above set out. As refused should have been given the plaintiffs.

For the errors indicated, the judgment is reversed, and the cause remanded.

*Reversed and remanded.*